UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

STATE OF OHIO, DEVELOPMENT
SERVICES AGENCY,

        Plaintiff,

v.

ULTRACELL CORPORATION, et al.,

        Defendants.

Case No. 2:16-cv-187
CHIEF JUDGE EDMUND A. SARGUS, JR.
Magistrate Judge Elizabeth P. Deavers

## OPINION AND ORDER

This matter is before the Court on the Supplemental Motion to Dismiss [ECF No. 15] filed by Defendants UltraCell, LLC and Bren-Tronics, Inc. For the following reasons, Defendants' Motion is **GRANTED**, and this case is **DISMISSED** for lack of subject-matter jurisdiction.

I.

Plaintiff, the Ohio Development Services Agency ("DSA"), brings this suit against Defendants UltraCell Corporation ("UC Corporation"), UltraCell, LLC ("UC, LLC"), Bren-Tronics, Inc., ("Bren-Tronics"), five John Does who are officers and/or directors of Bren-Tronics, and five John Does who are former officers and/or directors of UC Corporation. (Compl. at 2–3 [ECF No. 1].) Plaintiff asserts a variety of state law claims: (1) breach of contract against UC Corporation; (2) tortious interference with contract against Bren-Tronics and all of the John Does; (3) breach of fiduciary duty against the UC Corporation John Does; (4) fraudulent transfer against UC Corporation and UC, LLC; (5) successor liability (de facto

merger) against Bren-Tronics; (6) successor liability (mere continuation) against UC, LLC; and (7) successor liability (fraudulent intent) against UC, LLC. (*Id.* at 6–9.)

Plaintiff brings this case under the Court's diversity jurisdiction. (Compl. ¶ 8 (citing 28 U.S.C. § 1332(a)(1)).) Plaintiff alleges that the amount in controversy exceeds $75,000 and that there is complete diversity of citizenship between it and the Defendants. (*See id.*) UC Corporation "was domiciled in California." (*Id.*) And UC, LLC "is a subsidiary of . . . Bren-[T]ronics, Inc., a New York corporation." (*Id.*) Plaintiff does not address its own citizenship. (*See id.*)

Defendants UC, LLC and Bren-Tronics moved to dismiss for lack of personal jurisdiction on May 24, 2016. (Mot. to Dismiss at 1 [ECF No. 10].) Around a month and a half later, UC, LLC and Bren-Tronics filed a Supplemental Motion to Dismiss. (Supplemental Mot. to Dismiss at PageID 299 [ECF No. 15].) In their Supplemental Motion, Defendants request that the Court dismiss this case for lack of subject-matter jurisdiction under Federal Rule 12(b)(1). (*Id.*)

## II.

### A.  Subject-Matter Jurisdiction

A federal court "generally may not rule on the merits of a case without first determining that it has jurisdiction over the category of claim in suit (subject-matter jurisdiction) and the parties (personal jurisdiction)." *Sinochem Int'l Co. v. Malay. Int'l Shipping Corp.*, 549 U.S. 422, 430–31 (2007). "Customarily, a federal court first resolves doubts about its jurisdiction over the subject matter" of a case before proceeding to the personal jurisdiction inquiry. *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 578 (1999). The Court adheres to that custom here and decides Defendants' subject-matter challenge first. Because the Court's lack of subject-matter

2

jurisdiction disposes of this case, the Court need not consider the dispute over personal jurisdiction.

"The basic statutory grants of federal-court subject-matter jurisdiction are contained in 28 U.S.C. §§ 1331 and 1332." *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 513 (2006). As relevant here, a district court has jurisdiction over a civil case under § 1332 (i.e., diversity jurisdiction) where the matter in controversy exceeds $75,000 and is between citizens of different states. 28 U.S.C. § 1332(a).

"The objection that a federal court lacks subject-matter jurisdiction may be raised by a party, or by a court on its own initiative, at any stage in the litigation, even after trial and the entry of judgment." *Arbaugh*, 546 U.S. at 506 (citations omitted); *see* Fed. R. Civ. P. 12(b)(1), 12(h)(3). "[W]hen a federal court concludes that it lacks subject-matter jurisdiction, the court must dismiss the complaint in its entirety." *Arbaugh*, 546 U.S. at 514.

"Motions to dismiss for lack of subject-matter jurisdiction generally fall into two categories: facial attacks and factual attacks." *Fleming v. Gloege*, No. 2:14-cv-2158, 2015 WL 6107620, at *2 (S.D. Ohio Oct. 16, 2015); *see Gentek Bldg. Prods., Inc. v. Sherwin-Williams Co.*, 491 F.3d 320, 330 (6th Cir. 2007). A facial attack is a challenge to the sufficiency of the pleading and requires the court to take all of the allegations of the complaint as true. *Carrier Corp. v. Outokumpu Oyj*, 673 F.3d 430, 440 (6th Cir. 2012). A factual attack, however, allows the court to "weigh evidence to confirm the existence of the factual predicates for subject-matter jurisdiction." *Id.* In a factual attack, "no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims." *RMI Titanium Co. v. Westinghouse Elec. Corp.*, 78 F.3d 1125, 1134 (6th Cir. 1996). A trial court "has wide discretion to allow affidavits,

3

documents, and even a limited evidentiary hearing to resolve jurisdictional facts." *Gentek*, 491 F.3d at 330.

## B. Plaintiff's Citizenship

Here, UC, LLC and Bren-Tronics launch a factual attack. They contend that the Court lacks subject-matter jurisdiction over this case because the case does not involve a dispute between citizens of different states. (Supplemental Mot. to Dismiss at PageID 300–01 [ECF No. 15].) Specifically, Defendants contend that Plaintiff, the Ohio Development Services Agency, is not a citizen for diversity purposes because it is, essentially, the State of Ohio. (*See id.*)

A court's diversity jurisdiction over a dispute often hinges on "whether an entity is an 'arm of the [s]tate' on the one hand or a 'political subdivision' on the other." *Ernst v. Rising*, 427 F.3d 351, 359 (6th Cir. 2005). A state is not a "citizen" for purposes of diversity jurisdiction. *Moor v. Alameda Cnty.*, 411 U.S. 693, 717 (1973); *see* 28 U.S.C. § 1332(a)(1). Nor is an "arm or alter ego of a [s]tate" a citizen of that state for diversity purposes. *See Moor*, 411 U.S. at 717. A suit between a state (or an arm or alter ego of the state) and a citizen of another state is, in other words, not a suit between citizens of different states over which a federal district court could exercise diversity jurisdiction. *See Postal Tel. Cable Co. v. Alabama*, 155 U.S. 482, 487 (1894); *Hughes-Bechtol, Inc. v. W. Va. Bd. of Regents*, 527 F. Supp. 1366, 1373–74 (S.D. Ohio 1981).

A political subdivision, by contrast, is a citizen for purposes of diversity jurisdiction. *See Moor*, 411 U.S. at 717–18. Political subdivisions are public legal entities, at least partially independent of the state government, that exercise local governmental functions and are typically directed by an elected executive or board. *See* O.R.C. § 2744.01(F) (defining "[p]olitical subdivision" as "a municipal corporation, township, county, school district, or other body corporate and politic responsible for governmental activities in a geographic area smaller than

4

that of the state" (internal quotation marks omitted)); *Mumford v. Basinski*, 105 F.3d 264, 269 n.7 (6th Cir. 1997) ("[T]he 'political subdivisions' of the state . . . are those non-federal public entities which are functionally restricted geographically to areas smaller than the entire state, which units are at least partially independent of the state government, such as counties and cities."); *see also Black's Law Dictionary* 577 (4th pocket ed. 2011) (defining "political subdivision" as "[a] division of a state that exists primarily to discharge some function of local government").

In determining whether an entity is an arm of the state or a political subdivision, the Sixth Circuit has considered four factors: (1) the state's potential liability for a judgment against the entity; (2) the language by which state statutes and state courts refer to the entity and the degree of state control over the entity's actions; (3) whether state or local officials appoint the board members of the entity; and (4) whether the entity's functions fall within the traditional purview of state or local government. *Ernst*, 427 F.3d at 359; *see also Treadstone Capital Mgmt., L.P. v. TBTW Holdings*, No. 1:09-cv-1099, 2010 WL 1038653, at *2 (W.D. Mich. Mar. 18, 2010).

Under these factors, Plaintiff is an arm or alter ego of the State of Ohio.

### 1. The State's Potential Liability

To begin, the State of Ohio would be liable for any judgment entered against Plaintiff. The State has waived its immunity from liability subject to the limitations outlined in O.R.C. Chapter 2743. *See* O.R.C. § 2743.02(A)(1). And as defined in that Chapter, the "State" encompasses "all departments, boards, offices, commissions, agencies, institutions, and other instrumentalities of the state." *Id.* § 2743.01(A); *see also id.* § 122.01(A) ("As used in the Revised Code, the 'department of development' means the development services agency . . . .").

5

Plaintiff notes that its director may be sued in his official capacity in accordance with O.R.C. Chapter 2743. (Mem. in Opp'n at 2 [ECF No. 22] (citing O.R.C. § 122.011(B)).) Plaintiff's point, although seemingly made in an effort to distinguish DSA from the State, simply reinforces the Court's determination that any judgment entered against Plaintiff would be paid by the State. *See Kentucky v. Graham*, 473 U.S. 159, 165–66 (1985) ("As long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity.").

Plaintiff also notes that revenue bonds issued to fund its activities do not constitute a debt, or a pledge of the faith and credit, of the State. (Mem. in Opp'n at 2 (citing O.R.C. §§ 122.47 and 122.50).) This observation, however, does not cast doubt on the State's liability for a judgment entered against Plaintiff.

The first factor, in sum, suggests that Plaintiff is an arm or alter ego of the State.

### 2. State Statutory Language and Degree of State Control

Ohio Revised Code Chapter 121 explicitly creates the "development services agency" as a "department[] of state administration." O.R.C. §§ 121.01(A) and 121.02(N). And other Ohio statutes, including those that outline Plaintiff's powers and duties, refer to Plaintiff as a "department" and an "agency." *See generally id.* ch. 122.

In line with this statutory language, the State exercises considerable control over Plaintiff's actions. As UC, LLC and Bren-Tronics correctly note in their Supplemental Motion, Plaintiff's funding source is the state treasury—primarily in the form of various named economic development funds. *See, e.g.*, O.R.C. §§ 122.051, 122.072, 122.54, and 166.02(D). Plaintiff's access to the economic development funds is, in turn, typically subject to the approval of the Controlling Board, an entity whose members are designated by State executive and legislative

6

officials. *See id.* § 127.12 (defining the Controlling Board's membership); *id., e.g.,* § 122.42(A)(3) (stating that the director of development services shall, among other things, "[t]ransmit determinations to approve assistance to the [C]ontrolling [B]oard together with any information the [C]ontrolling [B]oard requires for the board's review and decision as to whether to approve the assistance"); *id., e.g.,* §§ 122.20(B), 122.76(A), 166.02(B)(3), 166.03(B), 166.06(B)(2), 166.07(A), 166.12(B)(3), 166.16(A), 166.17(B)(3), 166.21(A), and 166.25(A) (allowing for DSA's use of economic development fund monies subject to the Controlling Board's approval).

In an effort to demonstrate its separateness from the State, Plaintiff points to two circumstances where the decisions of the DSA director are purportedly immune from appeal. (Mem. in Opp'n at 2 [ECF No. 22].) Plaintiff first identifies O.R.C. § 122.45. But that section does not actually deal with decisions made by the DSA director. The cited language in § 122.45 describes how local governments, which have received loans from Plaintiff, may utilize the loan funds. Local government decisions as to the use of those funds are not "subject to any appeal." O.R.C. § 122.45. Plaintiff also identifies O.R.C. § 122.177(C)(3), which states that Plaintiff's determination regarding the award of a career exploration internship grant "is final and may not be appealed for any reason." Section 122.177(C)(3) clearly prohibits appeals from DSA decisions. That section, however, is limited to awards made under the career exploration internship program and has no relation to the actions taken by Plaintiff in this case. *See* O.R.C. § 122.177(C)(3). And that section, viewed in the context of the numerous circumstances in which Plaintiff is subject to State oversight, does little to change the Court's overall conclusion that the State exercises a substantial degree of control over Plaintiff.

7

Plaintiff attempts to analogize itself to the Connecticut Development Authority ("CDA"), which "was formed with a similar purpose as DSA" and "was deemed [by the Second Circuit] to be . . . a citizen of Connecticut." (Mem. in Opp'n at 2 [ECF No. 22].) The Second Circuit found the CDA to be a citizen of Connecticut for diversity purposes because the CDA was "a political subdivision of the state that [was] empowered to sue and be sued." *N.Y. Life Ins. Co. v. Conn. Dev. Auth.*, 700 F.2d 91, 95 n.5 (2d Cir. 1983). But unlike the CDA, Plaintiff is not a political subdivision; Plaintiff is a state agency. *See* O.R.C. §§ 121.01(A) and 121.02(N). Plaintiff's analogy falls flat.

Under the second factor, Ohio's statutory language and the degree of State control over Plaintiff support a finding that Plaintiff is an arm or alter ego of the State.

### 3. Appointment by State Officials

Plaintiff's director, the "director of development services," is appointed by the governor with the advice and consent of the Ohio senate. O.R.C. § 121.03(I). Plaintiff's director is "subject to removal at the pleasure of the governor," and he holds his office "during the term of the appointing governor." *Id.* Under this third factor, Plaintiff's connection to the State is clear.

### 4. Traditional Purview of State Government

Lastly, the services that Plaintiff provides fall within the traditional purview of state government. To start, O.R.C. Chapter 121 indicates that Plaintiff is one of several "departments of *state administration*." O.R.C. § 121.01(A) (emphasis added). DSA was created to "develop and promote plans and programs designed to assure that *state resources* are efficiently used, economic growth is properly balanced, community growth is developed in an orderly manner, and local governments are coordinated with each other and the state." *Id.* § 122.011(A) (emphasis added). To further that objective, DSA "[p]repare[s] and activate[s] plans for the

8

retention, development, expansion, and use *of the resources and commerce of the state*"; "[c]oordinate[s] the activities of *state agencies* that have an impact on carrying out the functions and duties of the [DSA]"; "[m]aintain[s] a continuing evaluation of existing research facilities *in the state*"; "[p]repare[s] and disseminate[s] information relative to research facilities *in the state*"; and promotes trade, travel, and general economic growth for the State. *Id.* §§ 122.011(A)(2) and (A)(7), 122.03(A) and (B), 122.04(E), (F), and (I) (emphasis added). Granted, DSA works with local governments to develop solutions to their particular economic development issues. *See id.* § 122.011(A)(8). But with its focus on the efficient use of state resources, its development of statewide plans and programs, and its coordination of state agency activities, DSA's services are within the traditional purview of state government. *See Ernst*, 427 F.3d at 361 (concluding that a retirement system performed a traditional state function in part because the retirement system operated on a statewide basis and collaborated with the state treasury and state agencies); *Smith v. Ohio Legal Rights Service*, No. 2:10-cv-1124, 2011 WL 1627322, at *6 (S.D. Ohio Apr. 29, 2011) ("[T]he Court recognizes that [the] functions [of the Ohio Legal Rights Service ("OLRS")] fall under the traditional purview of state as opposed to local government. OLRS'[s] statewide scope of operations as opposed to the more localized operations involved[] [in other cases], point to state and not political subdivision responsibilities."); *cf. Skidmore v. Access Grp, Inc.*, 149 F. Supp. 3d 807, 816 (E.D. Mich. 2015) (examining an entity's duties, as defined by state statute, in determining that the entity was an arm of the state).

      This last factor, like the others, supports the Court's conclusion that Plaintiff is an arm or alter ego of the State of Ohio. As an arm or alter ego of Ohio, Plaintiff is not a citizen of a state

9

for diversity purposes. And in the absence of litigants who are citizens of different states, the Court has no subject-matter jurisdiction over this case.

### III.

For these reasons, Defendants' Supplemental Motion to Dismiss [ECF No. 15] is **GRANTED**, and this case is **DISMISSED** for lack of subject-matter jurisdiction.

The other pending motions in this case [ECF Nos. 10, 21] are **DENIED AS MOOT** given that the case is dismissed.

**IT IS SO ORDERED.**

\_\_\_1-30-2017_____      _____
**DATE**                      **EDMUND A. SARGUS, JR.**
                              **CHIEF UNITED STATES DISTRICT JUDGE**